UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MORRIS FINLEY, Plaintiff, | | |
| -against- | | **MEMORANDUM & ORDER** |
| STATE OF GEORGIA, Defendant. | | 3:26-MC-00129 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Morris Finley, a resident of Georgia who is appearing *pro se*, brings this action against the State of Georgia. Plaintiff initiated this action by filing a "Notice of Filing" that includes a UCC Financing Statement plus purported affidavits of claims to default and "affirmative collection notices" against the State of Georgia. *See* ECF No. 1. Liberally construed, Plaintiff appears to claim that the filing of these documents entitles him to $1,000,000 from the State of Georgia under the Uniform Commercial Code, given alleged Constitutional violations committed by Georgia or its actors. The Court construes these documents as an attempt to file a complaint and to enforce a judgment under 28 U.S.C. § 1963 in this action. *Jones v. United States*, No. 25-CV-6150 (LTS), 2025 WL 3159110, at *1 (S.D.N.Y. Nov. 10, 2025) (construing document filed by pro se plaintiff as complaint). For the reasons set forth below, the Court finds that, under either construction, dismissal without leave to amend is warranted for lack of subject matter jurisdiction.

## I. LEGAL STANDARD

Because a party invoking federal jurisdiction bears the burden of proving facts to establish jurisdiction, *see Scelsa v. City Univ. of N.Y.,* 76 F.3d 37, 40 (2d Cir. 1996), a court may *sua sponte* dismiss any action for lack of subject matter jurisdiction. Indeed, the Federal Rules of Civil Procedure so require. Rule 12(h)(3) demands that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See also United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994) (stating that dismissal for lack of subject matter jurisdiction is mandatory).

Federal subject matter jurisdiction can only be predicated on (1) diversity of citizenship, or (2) a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Diversity jurisdiction exists when there is complete diversity between the parties—including when the parties are "citizens of different states"—and the "controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Sovereign immunity—including the Eleventh Amendment's shielding of States from suit absent their consent—is also "jurisdictional in nature" and thereby deprives a court's subject matter jurisdiction when it applies. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014); *Hamm v. United States,* 483 F.3d 135, 137 (2d Cir. 2007).

## II. DISCUSSION

The Court lacks subject matter jurisdiction over this action because there is no diversity of citizenship between the parties, nor does Plaintiff properly invoke a federal question. This

action is additionally barred by sovereign immunity, which also deprives this Court of subject matter jurisdiction. The action must therefore be dismissed. Fed. R. Civ. P. 12(h)(3).

**A. Diversity Jurisdiction**

First, there is no diversity of citizenship between the parties. Plaintiff is a resident of Georgia, and Plaintiff brings this action against the State of Georgia. ECF No. 1. But it has long been understood that "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Cnty. of Alameda,* 411 U.S. 693, 717 (1973). Thus, "a State cannot be sued [in federal court] on diversity grounds." *E. Sav. Bank v. Walker*, 775 F. Supp. 2d 565, 567 (E.D.N.Y. 2011). This would be true even if Plaintiff had brought this action against a State where he does not reside. *See Krisel v. Duran*, 386 F.2d 179, 181 (2d Cir. 1967) ("[a] state is not (itself) a citizen and a suit between a state and a citizen of another state is not between citizens of different states" (cleaned up) (quoting *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894)). Subject matter jurisdiction in this case accordingly cannot be predicated on diversity.

**B. Federal Question Jurisdiction**

Nor can subject matter jurisdiction be properly predicated on a federal question here. Plaintiff appears to claim that he is owed $1,000,000 by the State of Georgia pursuant to the Georgia Uniform Commercial Code, the Official Code of Georgia Annotated, and—in some places—the Federal Rules of Civil Procedure, specifically Rules 55(a)(b)(1) and 77. ECF No. 1 at 2–4, 7, 10. Plaintiff's references to Georgia statutes are plainly not federal questions. And Plaintiff's references to the Federal Rules of Civil Procedure do not present the Court with a federal question, either. Because the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072, the Rules "do not create a private

right of action," *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015), and their invocation is therefore insufficient to establish federal subject matter jurisdiction.

Plaintiff does cursorily allege violations of "due process" and "equal protection" "which resulted in financial damages and rights deprivations under [the] Bill of Rights." *See, e.g.*, ECF No. 1 at 7. These purported constitutional deprivations, however—cursorily stated, with no factual basis, in an "Affirmative Collection Notice" that the Court has already liberally construed as a complaint—are insufficient to invoke this Court's federal question jurisdiction. This is so even considering the Supreme Court's caution that "only wholly insubstantial and frivolous claims" warrant dismissal for lack of subject matter jurisdiction when the Constitution, or some other federal law or right, is invoked. *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (cleaned up); *see also Hannis Distilling Co. v. Mayor & City Council of Baltimore,* 216 U.S. 285, 288 (1910) ("obviously frivolous or plainly unsubstantial"); *Bailey v. Patterson,* 369 U.S. 31, 33 (1962) (per curiam) ("wholly insubstantial," "legally speaking non-existent," "essentially fictitious").

This is one of those frivolous cases. "Mere invocation of the federal Constitution, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction." *Randolph v. Goodman*, No. 25-CV-04833 (JLR), 2025 WL 2410503, at *2 (S.D.N.Y. Aug. 20, 2025) (no federal question jurisdiction because Plaintiff did not allege facts supporting claim); *see also Gause v. Chase Bank N.A.*, No. 11-CV-06107 (JS) (ARL), 2012 WL 847816, at *3 (E.D.N.Y. Mar. 12, 2012) (dismissing *pro se* plaintiff's claim for lack of subject matter jurisdiction because "[d]espite [p]laintiff's reference to the Fourth and Fifth Amendments of the Constitution, his allegations [did] not support a colorable claim such that this [c]ourt's subject matter jurisdiction is invoked"). Plaintiff appears to suggest that, because

the State of Georgia has infringed upon his Constitutional rights or otherwise failed to respond to his demands, the Georgia Uniform Commercial Code entitles him or his estate to $1,000,000. Plaintiff has failed to allege, nor can the Court cannot discern *any* facts—indeed Plaintiff merely filed conclusory notices of payment demands rather than a formal complaint—that even suggest a potential Constitutional violation. There is accordingly no proper federal question jurisdiction here.

**C. Ancillary Jurisdiction**

Next, to the extent that Plaintiff is attempting to enforce a judgment, the Court lacks ancillary subject matter jurisdiction to entertain Plaintiff's request. Where federal jurisdiction is otherwise nonexistent, courts may assert ancillary jurisdiction for two separate purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," and "(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994). While "[t]he first category generally applies to cases in which a plaintiff brings related state law claims in addition to claims over which the court has original jurisdiction," the second category, described as enforcement ancillary jurisdiction, is limited to "rare circumstances." *Winter v. Novartis Pharms. Corp.*, 39 F. Supp. 3d 348, 351 (E.D.N.Y. 2014). Notably, the Supreme Court has "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). A federal district court may exercise ancillary jurisdiction under 28 U.S.C. § 1963 after a party registers a federal judgment in the district where the court is located. *Dipippa v. Fulbrook Cap. Mgmt, LLC*, No. 19-MC-0032 (KAD), 2019 WL 8331426, at *1 (D. Conn. Aug. 29, 2019); *see also Weininger v.*

*Castro*, 462 F. Supp. 2d 457, 490 (S.D.N.Y. 2006) ("Upon registration of the judgment, this Court obtained subject matter jurisdiction over the enforcement proceeding through ancillary jurisdiction to enforce a judgment.").

But Plaintiff has not satisfied the registration requirements sufficient to confer ancillary jurisdiction. As found in Section 1963, registration is a statutorily-created procedure "which avoids the cumbersome common law process of filing a civil action to enforce the judgment of another court." *Caruso v. Perlow*, 440 F. Supp. 2d 117, 118 (D. Conn. 2006). A judgment "may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. "By its express terms, § 1963 applies only to registration of federal-court judgments in another federal court." *Mobil Cerro Negro, Ltd. v. Venezuela*, 863 F.3d 96, 123 (2d Cir. 2017) (cleaned up). Here, while Plaintiff has filed documents purporting to show entitlement to $1,000,000 from the State of Georgia, those documents fall short of the requirement to file a certified copy of a federal judgment. The record does not reveal that Plaintiff received any judgment from a federal court. Thus, the Court is without ancillary jurisdiction to consider Plaintiff's claims. *Caruso*, 440 F. Supp. 2d at 119.

**D. Sovereign Immunity**

Even with the conclusory nature and implausibility of Plaintiff's claims aside, the allegations suffer from another defect: sovereign immunity. "[B]ecause sovereign immunity is jurisdictional in nature, questions of sovereign immunity implicate a court's subject matter jurisdiction." *Arjent LLC*, 7 F. Supp. 3d at 383 (S.D.N.Y. 2014) (cleaned up)

(citing *Hamm,* 483 F.3d at 137). A court may *sua sponte* raise sovereign immunity as a bar to federal subject matter jurisdiction. *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001).

Plaintiff appears to demand money from the State of Georgia alone. But "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits absent their consent." *Frew*, 540 U.S. at 437. And although the Eleventh Amendment permits suits in limited circumstances against state officials acting in violation of federal law, *id.* even if the Court were to construe Plaintiff's complaints as against state officials, *see* ECF No. 1 (mentioning "actions or omissions" of a Georgia prosecutor), if an award of damages would be paid from the state treasury, the action is effectively still against the state, so sovereign immunity continues to apply. *Mercer v. Schriro*, 337 F. Supp. 3d 109, 136 (D. Conn. 2018); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). Applied here, Plaintiff's claims are thus barred by sovereign immunity, because his action appears lodged against Georgia alone; and even if Plaintiff's claims were construed as against state officials, he ultimately seeks money from the Georgia Treasury. *See, e.g.*, ECF No. 1 at 4 (demanding "immediate payment" from "The Georgia State Treasury"). The Court thus lacks subject matter jurisdiction over the case, so dismissal is required. Fed. R. Civ. P. 12(h)(3).

**E. No Leave to Amend**

The Court does not grant Plaintiff leave to amend his complaint. "Although a *pro se* plaintiff should generally be afforded an opportunity to amend his complaint prior to its dismissal for lack of subject matter jurisdiction," *Baker v. New York State*, 128 F. App'x 185, 186 (2d Cir. 2005), "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend," *Ruffolo v. Oppenheimer & Co.*,

987 F.2d 129, 131 (2d Cir. 1993). In *Cuoco v. Moritsugu*, denial of leave to replead was appropriate, because even when the complaint was read liberally, it did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." 222 F.3d 99, 112 (2d Cir. 2000). Rather, "the problem" was "substantive; better pleading w[ould] not cure it." *Id.*

So too here. Plaintiff's claim to relief faces insurmountable hurdles, even if leave to replead were granted. For one, Plaintiff's claims, even if they were better articulated, are implausible. Regardless of drafting skill, Plaintiff will not be entitled to $1,000,000 from the Georgia Treasury by authority of his "affirmative collection notices" that cite the Uniform Commercial Code and allege Constitutional deprivations. Moreover, sovereign immunity bars Plaintiff's claims no matter how artfully pled, because he ultimately pursues collection from the Georgia Treasury.

## III. CONCLUSION

For the foregoing reasons, because the Court determines that it lacks subject matter jurisdiction, Plaintiff's action is dismissed without leave to amend pursuant to Federal Rule of Civil Procedure 12(h)(3). The Clerk is respectfully directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
November 6, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge